# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| BEVERLY CLARK ET AL., | ) DOCUMENT ELECTRONICALLY ) FILED |
| Plaintiffs, | ) |
| v. | ) Honorable Dickinson R. Debevoise ) Civil Action 08-6197 (DRD-MAS) |
| THE PRUDENTIAL INSURANCE COMPANY OF AMERICA, | ) ) Hearing Date: June 1, 2012 |
| Defendant. | ) ) |

## DECLARATION OF THOMAS F. WILDSMITH, IV IN SUPPORT OF THE PRUDENTIAL INSURANCE COMPANY OF AMERICA'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

**GOODWIN PROCTER LLP**
Attorneys at Law
901 New York Avenue, N.W.
Washington, DC  20001
(202) 346-4000

**LOWENSTEIN SANDLER PC**
Attorneys at Law
65 Livingston Avenue
Roseland, NJ  07068
(973) 597-2500

*Attorneys for Defendant*
*The Prudential Insurance Company of America*

# Declaration of Thomas F. Wildsmith, IV in the matter of Beverly Clark, et al. v. The Prudential Insurance Company of America

# Civil Action Number 2:08-CV-06-06197 (D.N.J.).

March 23, 2012

I, Thomas F. Wildsmith IV, declare:

## I.     Introduction

I have reviewed the Declaration of Dr. H.E. Frech III dated February 21, 2012. In his Declaration, Dr. Frech attempts to remedy certain flaws in his "but-for" index. It is my opinion that this attempt is unsuccessful. He still fails to identify the alternative coverage to which his proposed index would apply. The alternatives available to the proposed class members would vary from person to person. Those purchasing individual coverage would be re-underwritten and many, due to changes in health status since they purchased their CHIP policies, would face higher premiums or be denied coverage. Thus, even if his proposed index were technically sound, he has not indentified an appropriate base to which it may be applied to estimate the cost of alternative coverage. Because both the alternatives available, and the potential cost of those alternatives, would vary from person to person, the base to which the index would be applied would also of necessity differ between class members. Also, Dr. Frech's proposed index is not technically sound. The data he uses, Per Capita National Health Expenditures, are not a valid basis for constructing such an index. In addition, as discussed below, his specific proposed fixes are technically flawed.

## II.    Dr. Frech still fails to identify the alternative coverage to which his proposed index would apply

Dr. Frech describes his proposed "but-for" index as "a reasonable proxy for premium growth rates for policies not subject to a death spiral and into which CHIP policyholders would have been able to switch"[1] and assumes that for all plaintiffs the premiums for any alternative coverage would have been subject to the same health-status based "risk factors" as were used in setting the CHIP premiums when the CHIP policies were originally purchased and the plaintiffs were originally underwritten by Prudential.[2]

Dr. Frech fails to identify the specific alternative coverage to which his proposed index would apply. The alternatives actually available to a specific CHIP policyholder depended on the policyholder's specific circumstances, including age, health status and employment status. Those policyholders seeking to purchase individual coverage would have been re-underwritten by the new insurer. For any individual whose health status deteriorated before the closure of the

---

[1] Expert Report of Professor H.E. Frech, III, August 22, 2011, page 47.
[2] Expert Report of Professor H.E. Frech, III, August 22, 2011, pages 43, 44 and 51.

CHIP block, the risk class and risk factor assigned by Prudential when the policy was initially purchased is clearly not a predictor of the likely premium available for alternative individual market coverage purchased years later, after the block was closed in December of 1981. Dr. Frech's proposed index ignores these changes. Accurately assessing the effect of each CHIP policyholder's health status on the availability and price of alternative insurance at the time the CHIP block was closed is necessarily an individualized task.

### III.    Per Capita National Health Expenditure date is not an appropriate basis for such an index

To accurately index the underlying medical costs covered by a specific form of health insurance, it would be necessary to reflect the specific mix of goods and services reimbursed by the insurance program and used by the insured individuals. The specific goods and services covered vary between insurance programs (e.g., Medicaid covers long-term care, but Medicare and private Major Medical plans do not), and the mix of services used varies between different populations (e.g., the non-elderly have significantly different patterns of health care use than do seniors).

Dr. Frech's simplistic approach to indexing does not account for either of these factors. By way of contrast, and as an example of an approach to indexing that attempts to appropriately account for varying cost inputs, the Economic Healthcare Indices recently introduced by Standard and Poor's are based on an economic analysis of the underlying costs and payments to health providers for the specific goods and services provided to covered individuals.[3] Separate indices are provided for Commercial coverage and Medicare. The publicly available data used in constructing these indices include:[4]

      a. From the Bureau of Economic Analysis
           i. Personal Income
          ii. Transfer Payments
         iii. Taxes
      b. From the Bureau of Labor Statistics

---

[3] While the S&P indices are clearly superior to the index proposed by Dr. Frech, even they would not provide an adequate basis for the analysis proposed by Dr. Frech. S&P introduced these indices in October of 2010, with a pro-forma history going back only to 2003. (Introduction to the S&P Healthcare Economic Indices, Standard and Poor's, November 2010, available at http://www.standardandpoors.com/indices/sp-healthcare-economic-indices/en/us/?indexId=sp-healthcare-economic-indices.) The data underlying the Commercial indices is predominately from employer-sponsored programs, and represents a much wider mix of products than unmanaged indemnity programs such as CHIP. The S&P indices are only available on a national basis; they are not provided on a state specific basis.

[4] S&P Healthcare Economic Composite Indices: Index Methodology, Standard and Poor's, March 2011; S&P Healthcare Economic Hospital Indices: Index Methodology, Standard and Poor's, March 2011; S&P Healthcare Economic Professional Services Indices, Standard and Poor's, March 2011 (available at http://www.standardandpoors.com/indices/sp-healthcare-economic-indices/en/us/?indexId=sp-healthcare-economic-indices).

      i. Current Employment Statistics: Average Weekly Earnings of Production and Nonsupervisory Employees
1. General medical and surgical hospitals
2. Medical and diagnostic laboratories
3. Offices of other health practitioners
4. Offices of physicians
5. Other ambulatory health care services
6. Other hospitals
7. Outpatient care centers
8. Outpatient mental health centers
9. Psychiatric and substance abuse hospitals

      ii. Current Employment Statistics: All Employees
1. General medical and surgical hospitals
2. Medical and diagnostic laboratories
3. Offices of other health practitioners
4. Offices of physicians
5. Other ambulatory health care services
6. Other hospitals
7. Outpatient care centers
8. Outpatient mental health centers
9. Psychiatric and substance abuse hospitals
10. Total nonfarm

      iii. Employer Cost for Employee Compensation: Total Benefits
1. Hospital
2. Professional and related occupations

      iv. Producer Price Index
1. General medical and surgical hospitals by payer type: Medicaid patients
2. General medical and surgical hospitals

c. From the Centers for Medicare and Medicaid Services
    i. Professional Liability Physician Premium Survey
    ii. 5% Sample

d. From the Centers for Disease Control
    i. Morbidity and Mortality Weekly Report: Notifiable Diseases and Mortality Tables, Table III

e. From the Federal Register (Government Printing Office)
    i. Hospital Inpatient Payment Update
    ii. Hospital Outpatient Payment Update

f. From the Census Bureau
    i. Over 65 Population: Postcensal Monthly Estimates

Dr. Frech argues that an index based on national average data may be used because there is no material difference in the pattern of cost increases for total U.S. healthcare spending and that for either spending only on goods and services covered by private health insurance or for the population covered by individual health insurance plans – suggesting that there is no difference in spending patterns between different health insurance programs and populations. This is implausible. The National Health Expenditure data relied upon by Dr. Frech is not detailed enough to support the analysis that Dr. Frech wants to perform.[5] It does not match expenditures under different health programs to the populations or enrollment levels for those programs, and does not distinguish between the different forms of private coverage.[6] Thus, Dr. Frech is led to conclude that the pattern of cost increases for individual plans, employer-sponsored plans, and government-sponsored programs such as Medicare and Medicaid are materially the same – despite the significant differences in the programs and covered populations. The S&P indices, in contrast, explicitly distinguish between commercial plans and Medicare and examine the specific economic forces affecting each. This more sophisticated and appropriate analysis demonstrates the dramatically different patterns of cost increases between the two.[7][8]

At page 19 of his Declaration, Dr. Frech appeals to a study published in 1985 to suggest that his methodology is valid and widely accepted. First, the study cited had a different purpose than Dr. Frech's analysis; it was not intended to provide a basis for damage calculations.[9] Second, even if the use of per capita National Health Expenditures represented the state of the art in 1985, economic practice in this area has advanced dramatically since that time, as evidenced by the methodology of the S&P Healthcare Economic Indices[10] and the use of specific economic inputs

---

[5] Dr. Frech is limited to discussing "a subset of services *arguably more closely related* to services that would be covered under an individual health insurance policy" [Frech Declaration p. 17, emphasis added].

[6] Dr. Frech is also limited to discussing "a population *arguably more closely related* to the individual insurance population" [Frech Declaration p. 18, emphasis added]. This population is, in fact, everyone with private health insurance – regardless of the form. To put this into perspective, in 2010 there were 195 million Americans with private health coverage, of which only 30 million had individually purchased policies (Carmen DeNavas-Walt, Bernadette D. Proctor and Jessica C. Smith, *Income, Poverty and Health Insurance Coverage in the United States: 2010*, United States Census Bureau, September 2011). Despite Dr. Frech's assertion to the contrary, this is neither the "basket of services" nor the population I identified in my earlier report as necessary to construct a valid index for the cost of individually purchased health insurance.

[7] The annual change in the 12-month moving average for December of 2010 was 7.75 percent for the Commercial composite index, but only 3.27 percent for the Medicare composite index (Healthcare Costs Increase at a More Moderate Pace in 2010, According to the S&P Healthcare Economic Indices, Press Release, Standard and Poor's, February 17, 2011). The annual change in the composite indices for December 2011 was 7.11 percent for Commercial and 2.51 percent for Medicare (US Healthcare Costs Annual Growth Rates Show Broad Based Increases in December 2011, according to the S&P Healthcare Economic Indices, Press Release, Standard and Poor's, February 16, 2012). Dr. Frech's analysis, however, implicitly assumes that his proposed index would be valid for any health insurance program, whether public or private.

[8] While the S&P indices are much more sophisticated than Dr. Frech's and elucidate the significant difference in cost patterns between public and private coverage, they do not distinguish between individually purchased coverage and employer-sponsored health benefits, nor do they distinguish between managed care and indemnity coverage.

[9] Joseph P. Newhouse, William B. Schwartz, Albert P. Williams and Christina Witsberger, "Are Fee for Service Costs Increasing Faster than HMO Costs?" *Medical Care*, Vol. 23, No. 8 (August 1995), pp. 960-966.

[10] In addition to using the 1985 study to support his methodology, Dr. Frech also points to the results in Table 1 of that study to support his contention that "the various [health expenditure] categories experienced similar growth

(as opposed to generalized expenditure data) by the Office of the Actuary at the Centers for Medicare and Medicaid Services (CMS) in projecting future Medicare expenses for the annual Medicare Trustees' Report.[11]

## IV.  Dr. Frech's proposed remedies are themselves oversimplified and inadequate

Though Dr. Frech attempts to adjust his index to reflect the effect of the shift to managed care on U.S. healthcare spending, the core assumption used in this adjustment reflects an oversimplified approach that mishandles the available sources in the literature. He assumes a 20 percent savings for "managed care plans." This assumption is used for all types of managed care plans, and for the entire period covered by his index. Dr. Frech then qualifies his assumption by arguing, based on a single source from 1994, that while HMO plans may produce significant savings, data on premium levels indicate that PPO and POS plans may have higher costs than indemnity plans.[12] Dr. Frech bases his 20 percent assumption on a single source from 1996.[13] It is overly simplistic to use a single percentage savings assumption, based on a single source from a single year, for all types of managed care plans over a period of almost 30 years during which the managed care industry has gone through a significant evolution. In addition to oversimplifying the impact of managed care, Dr. Frech has mishandled the one source he references (at page 6 of his Declaration) for this assumption. He cites page 2 of the document for the 20 percent assumption: ". . .medical plan costs per employee for HMO's and PPO's were almost 20% less expensive than costs for traditional indemnity plans in 1995 . . ." But page 9 of the same source provides the details: "Foster Higgins' national survey of employer-sponsored health plans reveals that the average medical plan cost per employee . . . for HMO's was 19% lower . . . than traditional indemnity plans in 1995. The average cost for PPO coverage was 18%

---

rates in expenditures" [Frech Declaration, p. 20]. Note that this conclusion is not as general as Dr. Frech's language would suggest; Table 1 compares total NHE data to a subset of NHE data that the authors of the study judged as "more closely resembling those provided by the HMO" (the study examined a specific HMO, the Group Health Cooperative of Puget Sound). Note also that the data are from the period 1976 through 1981, before managed care was widely adopted. Using this table to draw conclusions about the cost of individually purchased, unmanaged indemnity coverage for the period 1981 to 2010 is completely unwarranted.

[11] See for example the 2011 ANNUAL REPORT OF THE BOARDS OF TRUSTEES OF THE FEDERAL HOSPITAL INSURANCE AND FEDERAL SUPPLEMENTARY MEDICAL INSURANCE TRUST FUNDS (https://www.cms.gov/ReportsTrustFunds/downloads/tr2011.pdf).

[12] Robert H. Miller and Harold S. Luft, "Managed Care Plans: Characteristics, Growth and Premium Performance," *Annual Review of Public Health*, 1994, 15:437-59. The authors did not themselves draw the conclusion in support of which Dr. Frech cites this paper. Note that in discussing premium levels, the authors focused on the premium levels for HMO plans, and cautioned that the data "must be used cautiously" because they "are not adjusted for differences among plans in age, gender, health status, number of dependents, location, coverage, or other differences in enrollee or plan characteristics. Some of the needed adjustments could have an important impact on the premium comparisons" and "the data compare premium costs by type of plan for all employers, rather than only for those employers who offered all types of plans." The data on premium levels came from markets surveys for 1991, 1992 and 1993.

[13] *A Look at Employers Cost of Providing Health Benefits*, Handout, Office of the Chief Economist, U.S. Department of Labor, July 31, 1996, citing average health plan premium data from the report entitled *National Survey of Employer-sponsored Health Plans 1995*, Foster Higgins, 1996. No adjustment is made for differences in benefit levels, the demographics or health status of employees and their dependents, or the location of the employers.

5

lower . . . than for a traditional indemnity medical plan." Thus, the very source he relies on for his core assumption directly contradicts his claim that PPO plans may not produce any savings.[14] This proposed modification to his index represents, at best, an ad hoc fix rather than a serious analysis of the impact of the shift to managed care.

Dr. Frech proposes an equally oversimplified adjustment to his index to reflect the impact of changes in the uninsured rate on U.S. healthcare spending. Dr. Frech bases his index on total per capita personal health spending by state. He proposes an adjustment based on the uninsured rate in each year and an estimate of the impact of being uninsured on health spending. There is a fundamental error in his approach, however. Both the uninsured rates and the estimates of the impact of coverage on health spending are for the non-elderly population, but Dr. Frech applies them to spending data that includes both the elderly and non-elderly. The uninsured rates are national rates, but Dr. Frech applies them to state-specific spending data – even though uninsured rates vary significantly between states.[15] Once again, Dr. Frech has offered an ad hoc fix rather than a serious analysis of the impact of coverage levels on the cost of health care in the states covered by this litigation.

Dr. Frech is treating total per capita personal health spending as if it were a market price for a simple commodity like a barrel of oil or a bushel of wheat – which it simply is not. Whether or not it is theoretically possible to construct an index for the economic factors driving the cost of coverage in a particular segment of the insurance market, such as individually purchased indemnity policies similar to CHIP, this is not what Dr. Frech has done. The use of inappropriate data cannot be corrected through simple, ad hoc fixes.[16] Dr. Frech has not rescued his proposed index. Were such a rescue possible, it would require removing all of the many extraneous and confounding factors that lie between the claims paid by health insurers for policyholders enrolled

---

[14] Dr. Frech's discussion in this area is also inconsistent with his own prior work. Dr. Frech coauthored a paper in 2000, based on work done for the American Association of Health Plans, which develops specific estimates of the cost savings of various types of managed care program relative to unmanaged indemnity coverage (H.E. Frech III, James Langenfeld and Michaelyn Corbett, *Managed Health Care Effects: Medical Care Costs and Access to Health Insurance*, November 2000 [http://www.econ.ucsb.edu/papers/wp12-00.pdf]). In this paper, Dr. Frech and his co-authors present different specific savings estimates for different forms of managed care. They estimate that PPOs and POS plans generate significant savings relative to unmanaged indemnity plans, and estimate that HMO plans produce savings that are well in excess of the 20 percent he uses in his Declaration (*see* Table 3 on page 18). Given the results presented in this paper, it is difficult to understand why Dr. Frech would propose using a flat 20 percent savings for all forms of managed care, or suggest that PPO and POS plans do not produce any savings. It is also difficult to understand why Dr. Frech would rely on the two sources cited in his Declaration when neither one is cited in the 2000 paper, even though both were available then.

[15] See for example Robert J. Mills and Shailesh Bhandari, *Health Insurance Coverage in the United States: 2002*, U.S. Census Bureau, September 2003. The 3-year average uninsured rate reported for 2000-2002 ranged from a low of 8.0 percent in Minnesota to a high of 24.1 percent in Texas. The rates for California, Ohio, Texas and Indiana were 18.7 percent, 11.4 percent, 24.1 percent and 12.0 percent respectively.

[16] Even if it could, Dr. Frech has ignored as much as he has attempted to correct. While attempting an adjustment for the uninsured rate, he has made no attempt to adjust for the aging of the population, for increases in Medicare and Medicaid enrollment (both of which have materially different provider reimbursement rates than most private health plans) relative to enrollment in private health insurance, nor for changes over time in Medicare and Medicaid provider payment levels.

in unmanaged indemnity plans (which ultimately drives the price of such polices), and aggregate national spending on personal health care. Whatever such an analysis might ultimately look like (assuming it is even possible, which has not been shown), it would of necessity be developed using fundamentally different data and methods than Dr. Frech has proposed.

I declare under penalty of perjury that the foregoing is to the best of my knowledge true and correct, and that this declaration was executed on the 23 day of March, 2012 at Arlington, Virginia.

Thomas F. Wildsmith IV

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on April 9, 2012.

/s/ Douglas S. Eakeley