**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

|  |  |  |
|---|---|---|
| BEVERLY CLARK ET AL., | ) | Honorable Dickinson R. Debevoise |
| Plaintiffs, | ) | Civil Action No: 08-6197 |
| v. | ) |  |
| THE PRUDENTIAL INSURANCE COMPANY OF AMERICA, | ) |  |
| Defendant. | ) |  |

**DECLARATION OF WAYNE CLARKE**

I, Wayne Clarke, declare as follows:

1.      I am Vice President, Administration, Enterprise Discontinued Business Solutions ("EDBS"), for The Prudential Insurance Company of America ("Prudential"). I have been employed in this capacity since 2005.

2.      I make this declaration based upon my personal knowledge and information that has been reasonably accessible to me in the course of my employment with Prudential.

3.      In my capacity as Vice President of Administration for EDBS, I oversee the operations and administration of Prudential's discontinued businesses, including its individual health policies and related policy records. This declaration focuses on the records that Prudential has regarding policyholders who hold or held its CHIP insurance policy.

4.      CHIP is an individual health insurance policy formerly sold by Prudential, and now overseen by EDBS. CHIP provides, and has provided, major medical coverage for policyholders up to 65 years of age. For policyholders 65 and above, CHIP provides, and has provided, Limited Medical Expense Insurance (LMEI) that coordinates with Medicare coverage.

LIBW/1812832.5

5.     For each CHIP policyholder, Prudential maintains or maintained a policyholder file containing some documents relating to that person's CHIP policy.  Retained policyholder files for policyholders who terminated their CHIP coverage in years previous to 2000 (Terminated Policy Files) were transferred in 2000 to a records storage facility in Jacksonville, Florida.

6.     On information and belief, the Terminated Policy Files were created between 1973 and 1981, when Prudential was actively marketing and issuing CHIP to new policyholders, at or around the time each new CHIP policy was applied for and issued.

7.     Prudential has diligently attempted to identify the names and contact information of persons who held CHIP policies in December 1981 that were issued in California, Ohio, Indiana, or Texas, consistent with the class definition set forth in plaintiffs' pleadings and plaintiffs' discovery requests.  To this end, Prudential allowed plaintiffs access to the Terminated Policy Files in Jacksonville; produced policy files for policyholders whose policies were still in force as of 2000; produced lists reflecting the names of policyholders prior to 2000 that were found in extensive searches of hardcopy and electronic documents; retrieved and reconstructed data from legacy computer systems no longer in use, and provided plaintiffs with access to data from defunct legacy computer systems that it could not reasonably access.

8.     In these productions, Prudential produced 11,431 Terminated Policy Files: 4 files produced in March 2010; 325 files produced as a result of plaintiffs' inspection of the Jacksonville warehouse in April 2010 (although this number is too high because it includes files for policyholders whose policies were issued in New York or New Jersey, who are no longer part of the proposed class); 1,710 files produced as a result of identification by Prudential of

2

Terminated Policyholder Files in the Jacksonville warehouse in December 2010;[1] and 9,392 files produced as a result of plaintiffs' inspection of the Jacksonville warehouse in April and May 2011.

9.      These Terminated Policyholder Files include people who had LMEI coverage as of March 1982, because the productions did not exclude such people. At the time the block closed, approximately 38 percent of policyholders had major medical coverage, and the remaining approximately 62 percent had LMEI coverage. If the produced files reflect that same division, then approximately 4,344 of the files are for people who had major medical coverage and are thus in the putative class. The exact number could be higher or lower, and may be indeterminable because it is not clear from every file whether someone was an LMEI policyholder. All we know for certain is that a substantial number of the Terminated Policyholder Files that were produced are for individuals who did not have the major medical coverage that is the subject of this litigation.

10.     Prudential also produced 656 policyholder files for policyholders whose CHIP policies were in force as of 2000 and whose policies were issued in the relevant states. (This figure includes all persons who held CHIP as of 2000, on the assumption that most of those people had major medical coverage as of March 1982. However, some of those policyholder files may be for people who are not members of the putative class because they had already converted to LMEI coverage by March 1982. That determination cannot be made, if at all, without at least a manual review of the policyholder files and information.)

---

[1]    This count excludes 841 files for policyholders whose policies were issued in New York or New Jersey.

3

11.     Thus, the approximate total number of relevant policyholder files that were identified and produced is 5,000, although this number is inexact because of the issue with LMEI policyholders discussed in paragraph 9.

12.     In an effort to identify all putative class members who terminated their CHIP policies prior to 2000, Prudential has also produced various partial lists of policyholders from before 2000.  Many of the names on these lists duplicate each other and duplicate the policyholder files described in the previous paragraphs.  The most comprehensive of those lists contained an additional 103 policyholder names for which no policyholder file could be found among the Terminated Policy Files.  Based on the fact that 38% of policyholders at the time of the block closure had major medical policies, it can be estimated that about 39 names are likely for CHIP policyholders who did not have LMEI coverage as of 1982.  Thus, Prudential has identified about 5,039 relevant names or policyholder files.  The exact figure could be higher or lower depending on how many of these people actually had LMEI or major medical policies as of the block closure, but suffice to say a substantial number of members of the putative class have not been identified.

13.     Those approximately 5,039 names are the only members of the putative class that can be identified based on Prudential's records.  The records necessary to discern the names of other putative class members were not retained as part of normal document retention practices during the course of the years and decades prior to the filing of this lawsuit.

14.     Even when Prudential has produced a policyholder file for a putative class member, the contact information, if any, for the policyholder is likely outdated.  For all but 656 of the identified policyholder files, the policies lapsed in the 1980s or 1990s.  Many of the other policies have lapsed since then.  Prudential does not update contact information for people who

4

no longer hold its policies.  To the extent any of the policyholders moved or changed their telephone number, Prudential's records would no longer reflect current contact information.

15.    Even where policyholder files exist for putative class members, the information contained in them is not a complete record of communications between policyholders and Prudential.  For instance, the policyholder files generally do not contain any record of policyholder communications with Prudential's agents.  Thus, determining the contents of communications between agents and policyholders would require asking the people involved in those conversations.

16.    Nor do the policyholder files typically reflect telephone calls that policyholders placed to Prudential.  Even for the period starting in 2002, where Prudential was able to obtain records of some customer calls, those calls are not reflected in the policyholder files; the records had to be obtained separately.  Prudential has no systematic or comprehensive record of calls made by policyholders to Prudential before 2002.

17.    The policyholder files also do not include all written records.  For instance, in reviewing numerous files, it is clear that not every rate increase notice is present in each file.  It also clear that the documents contained in files vary significantly.  Among the documents that appear in some files are payment coupon books, CHIP applications, CHIP "master records," and premium history information.  These documents likely existed for all policyholders, but such were not typically contained in all policyholder files.

18.    Given the incompleteness of policyholder files, and the absence of files for thousands of members of the putative class, policyholders would have to be asked about their communications with Prudential and what was said in those communications.

LIBW/1812832.5

19.     Determining the premiums paid by policyholders is not an easy task, and cannot be completed without knowing the policy numbers for all policyholders in the putative class. Records of premium billing and payments for policyholders who held CHIP policies and four other types of individual health policies from about 1980 to 1996 were stored on microfiche. There is no index for this microfiche. The microfiche contains policy numbers but not the names or location of policyholders, nor does it contain any indication that a policy number was for a CHIP policy or that the policy was issued in one of the states at issue in this litigation. Thus, one would need to know the CHIP policy numbers for policies of the putative class in each of the relevant states to search for premium payments made by CHIP policyholders. Even where that information is available, ascertaining the premiums paid for each policyholder is a laborious process requiring manual review of unsummarized chronological premium payment transactions for the limited period covered by each microfiche record.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on March __29__, 2012.

6

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent

electronically to the registered participants as identified on the Notice of Electronic

Filing (NEF) and paper copies will be sent to those indicated as non-registered

participants on April 9, 2012.

/s/ Douglas S. Eakeley